**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 19, 2023.**

_____
**MICHAEL M. PARKER
UNITED STATES BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| MICHAEL SCOTT OLSON | § § | CASE NO. 22-51401-MMP |
| DEBTOR. | § § § | CHAPTER 7 |
| SILVER DOLLAR SALES, INC., | § § § | |
| PLAINTIFF, | § § | |
| V. | § § § | ADVERSARY NO. 23-05032-MMP |
| MICHAEL SCOTT OLSON | § § | |
| DEFENDANT. | | |

1

**OPINION**

I. **INTRODUCTION**

Before the Court is *Plaintiff Silver Dollar's Motion for Summary Judgment* ("Motion," ECF No. 26)[1] filed by Silver Dollar Sales, Inc. ("Silver Dollar") and the *Defendant's Reply to Plaintiff's Motion for Summary Judgment and Objection to Summary Judgment Proof* ("Response," ECF No. 29) filed by Michael Scott Olson ("Olson"). Invoking this Court's full faith and credit obligation,[2] Silver Dollar seeks to have a $6,621,281.71 Mississippi state court judgment ("Mississippi Judgment") against Olson declared nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), and (a)(6)[3] and moves for summary judgment based on the doctrine of collateral estoppel. The Court finds that there is no genuine issue as to any material fact and Olson is entitled to judgment as a matter of law that the fraud and fraudulent transfer findings of fact in the Mississippi Judgment are precluded from relitigation, except as to the amount of the judgment attributable to such findings. The amount of the Mississippi Judgment attributable solely to fraud and fraudulent transfers is unclear. Silver Dollar is thus not entitled to summary judgment determining that the full amount of the Mississippi Judgment is nondischargeable.[4] Silver Dollar must still establish the portion of its claim solely attributable to Olson's fraud and fraudulent transfers which will be nondischargeable under 11 U.S.C. § 523(a)(2)(A). Accordingly, the Court grants the Motion in part.

---

[1] "ECF" denotes the electronic filing number.
[2] 28 U.S.C. § 1738.
[3] All statutory references are to Title 11 of the United States Code unless otherwise specified.
[4] The Court is not ruling that the entire $6.6 million judgment cannot be found to be non-dischargeable, but only that the Mississippi Judgment did not so clearly find.

2

## II.    JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334, and the Standing Order of Reference of the United States District Court for the Western District of Texas, dated October 4, 2013. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409. Both Plaintiff and Defendants have consented to the entry of final orders and a judgment by this Court in this adversary proceeding. ECF Nos. 21 and 25.

## III.    BACKGROUND

The relevant part of this long-running dispute begins more than two decades ago. Both parties participated in the wholesale grocery business. Olson owned River City Traders, a Tennessee corporation which bought wholesale grocery products and sold them to grocery stores. Ryan Sparks, owner of Silver Dollar and a related enterprise, T.B.S. Traders, began doing business with Olson and River City Traders beginning in 1995. In 2001, after River City Traders found itself in bankruptcy, Sparks and his companies executed a series of contracts extending credit to River City Traders. These contracts included a $1.32 million promissory note, a $512,397.03 promissory note, a settlement agreement, and a consignment agreement ("2001 Agreements").

River City Traders continued for several years but found itself in financial trouble yet again in late 2007. River City Traders did not honor its notes to Sparks and his enterprises and did not maintain sufficient collateral under the 2001 Agreements. In April 2008, T.B.S. Traders filed a complaint for replevin against River City Traders and received a favorable order in June of that year.[5] Sparks then assigned all claims held by T.B.S. Traders and himself personally to Silver Dollar and proceeded to file suit against Olson personally in Mississippi state court in April 2010.[6]

---

[5] Def.'s Ex. G.
[6] Pl.'s Mot. for Summ. J. at 2.

3

After years of litigation, Silver Dollar consolidated its claims in a third amended complaint.[7] Silver Dollar's complaint sought damages for breach of contract, breach of $1,320,000.00 promissory note, breach of $512,397.03 promissory note, tortious interference with contract, tortious interference with business relations, fraudulent transfer, fraud, conversion, and civil conspiracy. After trial, the Mississippi jury returned a verdict, finding for Silver Dollar. The jury also made specific findings that Olson committed fraud against Silver Dollar and that Olson had fraudulently transferred assets belonging to Silver Dollar.[8] The jury awarded $6,618,461.71 in compensatory damages and $250,000.00 in punitive damages. The Mississippi state court entered judgment against Olson for $6,618,461.71 in compensatory damages but reduced punitive damages to $2,820.00 under a Mississippi statute limiting punitive damages based on a defendant's net worth.

Olson then filed for chapter 7 bankruptcy in this Court and received a general discharge. Silver Dollar filed this adversary proceeding asking this Court to find its claims against Olson nondischargeable.

## IV. SUMMARY JUDGMENT STANDARD

Silver Dollar moves for summary judgment on its §§ 523(a)(2)(A), (a)(2)(B), and (a)(6) claims. Silver Dollar asserts that the Mississippi Judgment collaterally estops Olson from denying the amount and dischargeability of his obligations to Silver Dollar and eliminates any "genuine dispute as to any material fact" in Silver Dollar's Complaint. FED. R. CIV. P. 56(a).

If the Mississippi Judgment preclusively establishes each element of Silver Dollar's § 523(a)(2)(A), (a)(2)(B), and (a)(6) claims, and Olson cannot establish any dispute as to a material fact in Silver Dollar's Amended Complaint, then Silver Dollar is entitled to "judgment as a matter

---

[7] Pl.'s Ex. 1.
[8] Pl.'s Ex. 7.

4

of law." ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986). Once Silver Dollar has established that the Mississippi Judgment collaterally estops denial of its § 523(a) claims, the burden of proof then shifts to Olson to establish a disputed material fact, if any, to Silver Dollar's claims.

V. DISCUSSION

Invoking the doctrine of collateral estoppel, Silver Dollar asserts that the preclusive effect of relevant factual findings in the Mississippi Judgment makes Olson's debt to it nondischargeable under §§ 523(a)(2)(A), (a)(2)(B), and (a)(6). A debt can be found nondischargeable in bankruptcy if a creditor can show the debt satisfies the requirements of a subsection of § 523. Section 523(a)(2)(A) excepts debts from discharge which were obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Section 523(a)(2)(B) excepts debts from discharge which procured via a statement in writing that was i) materially false, ii) respecting the debtor's or an insider's financial condition, iii) on which the creditor reasonably relied, and iv) that the debtor made or published with an intent to deceive. Finally, § 523(a)(6) excepts debts from discharge that are for "willful and malicious injury by the debtor to another entity or to the property of another entity."

In this case, Silver Dollar seeks to use collateral estoppel to establish the elements of its nondischargeability action against Olson. For § 523(a)(2)(A), Silver Dollar seeks to use the fraud and fraudulent transfer findings in the Mississippi judgment to qualify its debt as obtained by "actual fraud," making it nondischargeable.[9] For its § 523(a)(2)(B) claim, Silver Dollar argues that the fraud findings show that Olson made misrepresentations about his financial well-being, similarly making his debt to Silver Dollar nondischargeable.[10] Finally, Silver Dollar also argues

---

[9] Pl.'s Complaint at 7.
[10] *Id.* at 8.

5

that the Mississippi Judgment for fraud results from Olson's willful and malicious injury to Silver Dollar, satisfying § 523(a)(6).[11] Therefore, for Silver Dollar to succeed in relying on the preclusive effect of the Mississippi Judgment to determine nondischargeability, it must show that the issue of Olson's fraud is barred from relitigation by collateral estoppel.

In nondischargeability actions, parties can rely on collateral estoppel to give preclusive effect to findings in previous judgments. **Grogan v. Garner**, 498 U.S. 279, 284 n.11 (1991). The doctrine of collateral estoppel provides that "[w]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." **Dowling v. U.S.**, 493 U.S. 342, 347 (1990) (citing **Ashe v. Swenson**, 397 U.S. 436, 443 (1970)).

Whether the Mississippi Judgment is entitled to preclusive effect depends on Mississippi collateral estoppel law. **Gober v. Terra + Corp. (In re Gober)**, 100 F.3d 1195, 1201 (5th Cir. 1996) (Courts "[m]ust look to the state that rendered the judgment to determine whether the courts of that state would afford the judgment preclusive effect." (citing **Marrese v. Am. Acad. Of Orthopaedic Surgeons**, 470 U.S. 373, 380 (1985))); *see also* **Caton v. Trudeau (In re Caton)**, 157 F.3d 1026, 1028 (5th Cir. 1998) (applying the collateral estoppel law of the state in which the prior decision at issue was entered). Any preclusive effect given to a state court judgment under Mississippi's doctrine of collateral estoppel also requires this Court to give such judgment full faith and credit. 28 U.S.C. § 1738; **Migra v. Warren City Sch. Dist. Bd. Of Educ.**, 465 U.S. 75, 81 (1984). Under Mississippi law, collateral estoppel precludes parties from relitigating specific issues when there is "(1) a prior final judgment on an issue that is (2) actually litigated, (3)

---

[11] *Id.* at 10.

determined by, and (4) essential to that judgment." ***Saucier v. Aviva Life and Annuity Co.***, 589 Fed. App'x. 701, 705 (5th Cir. 2014) (citing ***Baker & McKenzie LLP v. Evans***, 123 So.3d 387, 401 (Miss. 2013)). In this case, Silver Dollar seeks to use the findings of fraud in the Mississippi Judgment to establish elements of its nondischargeability claims. To succeed, Silver Dollar must introduce a record sufficient to establish the controlling facts and the issues litigated in the Mississippi proceedings. *Id.* Accordingly, Silver Dollar must show that:

(1) Silver Dollar received a final judgment on issues of fraud;
(2) the fraud issues were actually litigated at trial;
(3) the fraud claims were fully resolved in the Mississippi Judgment; and
(4) the determination of fraud was essential to the Mississippi Judgment.

The first requirement is easily met. The Mississippi Judgment included a specific finding of "liability for fraud and fraudulent conveyance" against Olson.[12] In addition, the Mississippi Judgment was a final judgment. Under Mississippi law, a final judgment on the merits "is one that adjudicates the merits of the controversy and settles all issues between all parties" ***LaFontaine v. Holliday***, 110 So. 3d 785, 787 (Miss. 2013). The Mississippi Judgment fully disposed of the issues in the case and adjudicated the merits of the controversy. The judgment could be appealed only within thirty days of the entry of the judgment. MISS. R. APP. P. 4(a). No such appeal was filed.

Under the second requirement, collateral estoppel "'applies only to questions actually litigated in the prior suit, and not to questions which might have been litigated.'" ***Mayor and Bd. of Aldermen, City of Ocean Springs v. Homebuilders Ass'n of Miss., Inc.***, 932 So.2d 44, 59 (Miss. 2006) (citing ***Dunaway v. W.H. Hopper & Associates***, 422 So.2d 749, 751 (Miss. 1982)). This requirement is satisfied because the entered final judgment, the jury instructions, and the

---

[12] Def.'s Ex. A. A fraudulent conveyance finding may be nondischargeable because "actual fraud" under § 523(a)(4) encompasses fraudulent conveyances. ***Husky Int'l Elecs., Inc. v. Ritz***, 578 U.S. 355, 363 (2016).

pleadings show that the fraud and fraudulent conveyance issues were both litigated by the parties at trial.

The third requirement, that the issue be "determined by" the previous judgment, is also met. *Saucier*, 589 Fed. App'x. at 705. As noted above, the Mississippi Judgment fully disposed of the fraud issues with special findings on fraud and fraudulent transfer. The third requirement is thus satisfied.

Finally, Mississippi law requires that the determination of the issue being precluded to be "essential to the judgment." *Saucier*, 589 Fed. App'x. at 705. In other words, the finding in the previous proceeding must have been necessary for the current court to reach its holding and cannot be mere dicta. *See* ***Covington Cty. Bank v. Magee***, 177 So.3d 826, 831-832 (Miss. 2015) (holding that a previous court's determination of a party's rights was not essential to the judgment because the case was dismissed on jurisdictional grounds and the determination was stated in a footnote). In the Mississippi proceedings, Silver Dollar's Amended Complaint[13] contained fraud and fraudulent transfer claims and the returned jury verdict form shows that the jury specifically found Olson committed fraud against Silver Dollar, and that Olson fraudulently transferred assets belonging to Silver Dollar. It is hard to think of a finding more essential to the judgment. Silver Dollar has carried its burden in showing the lack of a disputed issue of material fact about a finding of Olson's liability for fraud and fraudulent transfers in the Mississippi Judgment. For these reasons, the findings of fact in the Mississippi Judgment will be given preclusive effect.

But the preclusive effect of the Mississippi Judgment ends at the liability stage. The Mississippi Judgment collaterally estops Olson from relitigating the issues of his own liability for

---

[13] Pl.'s Ex. 1 at 14-18.

fraud and fraudulent transfers. The Mississippi jury made specific findings on both issues—Olson committed fraud against Silver Dollar and fraudulently transferred assets belonging to Silver Dollar. But the issue for this Court is whether the full judgment amount of $6,618,461.71 in compensatory damages and $2,820.00 in punitive damages (plus accrued interest) is nondischargeable in bankruptcy under § 523. Unfortunately, neither the language of the Mississippi Judgment nor that of the returned jury verdict form make clear how much of the total judgment flowed from fraud and fraudulent transfer claims, and how much flowed from the claims of conversion and breach of contract. Despite Silver Dollar's insistence to the contrary, this Court has a duty "tediously separate out damages between dischargeable and nondischargeable claims."[14] The Mississippi Judgment does not collaterally estop Olson from contesting the *amount* of the Mississippi Judgment that is nondischargeable.

The Mississippi Judgment states that "[t]he Plaintiff, Silver Dollar Sales, Inc. obtained a favorable jury verdict on its claims against Scott Olson for fraud, fraudulent conveyance, conversion and breach of contract, specifically finding liability for fraud and fraudulent conveyance…"[15] The Judgment further orders that Silver Dollar may recover "$6,618,461.71 in compensatory damages based on Plaintiff's claims for fraud, fraudulent conveyance, conversion, and breach of contract, plus interest at the rate of 8% per annum as of the date of entry of this judgment until paid."[16] Neither of those statements makes clear that the award stemmed solely from either fraud or fraudulent conveyance theories.

---

[14] Pl.'s Mot. for Summ. J. at 1. ***Sill v. Sweeney (In re Sweeney)***, 276 B.R. 186, 195-96 (6th Cir. BAP 2002) (where a state court judgment renders only a single amount owed for multiple causes of action, a bankruptcy court must determine what portion of that established debt is non-dischargeable).
[15] Pl.'s Ex. 9 at 2.
[16] *Id.*

9

But this Court need not only look at the final judgment to determine collateral estoppel on the issue of nondischargeability. Bankruptcy courts are empowered to look "beyond the labels which state courts—and even parties themselves—give obligations which debtors seek to have discharged." *Matter of Dennis*, 25 F.3d 274, 277 (5th Cir. 1994). A court may examine verdict forms, jury instructions, and other evidence offered in the first proceeding when analyzing the preclusive effect of a judgment. *In re Shuler*, 722 F.2d 1253, 1257-58 (5th Cir. 1984).

The jury verdict forms in the summary judgment record do little to illuminate the damages issue. The first form, marked Jury Instruction No. 16, presented the jury five questions:

1. Do you find for the Plaintiff?
2. If the answer to Question No. 1 is YES, do you find that the Defendant committed fraud against Silver Dollar Sales, Inc.; TBS Traders, Inc.; or Randy Sparks?
3. If the answer to Question No. 1 is YES, do you find that the Defendant fraudulently transferred assets belonging to Silver Dollar Sales, Inc.; TBS Traders, Inc.; or Randy Sparks?
4. If the answer to Question No. 1 is YES, do you find that the Plaintiff suffered damages?
5. If the answer to Question No. 4 is YES, at what amount do you assess damages?[17]

The jury answered in the affirmative to questions 1 through 4 and assessed damages at $6,618,461.71 in Question No. 5. Silver Dollar argues that this form makes clear that the full damages award flowed directly from the fraud and fraudulent conveyance charges (and those alone), and that to rule otherwise is a violation of this Court's full faith and credit obligation.

To the contrary, the Court intends to give full faith and credit to the entire Mississippi Judgment, which includes as grounds for its award the claims of conversion and breach of contract. The referenced jury instruction does not clarify that the damages flow only from the fraud and fraudulent conveyance claims. The jury found for Silver Dollar (presumably on all counts), found that Olson committed fraud and fraudulently transferred assets, and awarded damages. Nothing in

---

[17] Pl.'s Ex. 7.

10

the returned form shows that the damages were limited to the fraud and fraudulent transfer claims. Jury Instruction No. 16 alone does not resolve the damages issue.

The second returned jury verdict form, marked Jury Instruction No. 19, addressed punitive damages.[18] The form instructed the jury that punitive damages may be awarded if 1) Silver Dollar was entitled to compensatory damages, and 2) "Silver Dollar had proven by clear and convincing evidence that Olson acted with actual malice or gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." After listing some considerations the jury should assess in reaching its punitive damages conclusion, the form asks "What amount, if any, do you award the Plaintiff for punitive damages?" The returned form awarded Silver Dollar $250,000.00. This amount was later reduced to $2,820.00 due to a statutory limitation on the imposition of punitive damages.[19] Jury Instruction No. 19, like No. 16, also does not answer how much of the total amount awarded in the Mississippi Judgment flowed from the claims of fraud and fraudulent transfer.

Silver Dollar urges this Court to view the jury's return of these two verdict forms (and these two forms only) as eliminating any questions of fact about the Mississippi jury's *exclusive* finding of fraud. In other words, Silver Dollar posits that the jury could not have awarded any damages on breach of contract or conversion because they returned no other verdict forms. This is untrue. A review of the jury instructions given in the Mississippi proceedings[20] show that Jury Instructions Nos. 16 and 19 (the returned verdict forms) are the only instructions which include blank entries for the foreperson of the jury to complete. Silver Dollar has not pointed the Court to

---

[18] Pl.'s Ex. 8.
[19] Pl.'s Ex. 9 at 3. *See* Miss. Code Ann. §11-1-65 (limiting punitive damages based on a defendant's net worth).
[20] Pl.'s Ex. 6.

any Mississippi authority that gives weight to the return of certain jury instructions and not of others. In the Mississippi proceedings, the jury appears to have completed only Jury Instructions Nos. 16 and 19. The jury's return of certain instructions does not appear to show the jury only awarded damages on the fraud and fraudulent transfer issues. While it is clear from the instructions that the jury found Olson committed fraud and fraudulent transfers, the returned instructions do not necessarily show fraud and fraudulent transfers as the *exclusive* source of the damages.

Both parties cite an expert report introduced as evidence in the Mississippi proceeding by an accountant, Mr. Paul G. Jarrell, ("Expert Report") in support of their arguments. But the Expert Report contains evidence that cuts both ways. The Expert Report contains damage calculations in its "Attachment A" using "Method 1" and "Method 2." "Method 1" calculates damages at the eventual judgment amount: $6,618,461.71. Jarrell reached this amount simply by adding up the principal on the original notes ($5,012,397.03) with the interest accrued ($1,606,064.68). Nowhere in the attachment is there a calculation which ties the fraud to those amounts, nor does it specify the amount of money Olson fraudulently transferred. But as Silver Dollar's Counsel argued at the hearing on this motion, page 9 of the Expert Report states, "[e]ither method [of accounting] calculates damages that were incurred as a direct result of the diversion of funds by Olson." This supports Silver Dollar's argument that all $6,618,461.71 in damages was a direct result of Olson's fraudulent transfers. Because the Expert Report fails to focus exclusively on the fraud and fraudulent transfer portion of the damages, the Court will not ascribe the report's conclusions to the jury as the jury's conclusions when awarding damages.

For these reasons, a fact issue remains as to how much of Olson's debt to Silver Dollar resulted from fraud or fraudulent transfers. The Court will therefore deny summary judgment as

to the *amount* of the Mississippi Judgment that is nondischargeable, but Olson is collaterally estopped from relitigating his *liability* for fraud and fraudulent transfers at trial.[21]

## VI. CONCLUSION

The Court grants Silver Dollar's Motion in part. Silver Dollar has met its burden to show that there are no disputed issues of material fact about the preclusive effect of the Mississippi Judgment's liability determination. But a material issue of fact remains: what portion of the Mississippi Judgment is nondischargeable? An order granting the Motion in part will be entered separately.

# # #

---

[21] To clarify for trial on the damages issue, the Court will respond to a specific argument made by Olson. Counsel for Olson, at the hearing on this motion, argued that because part of the damages (as calculated by Silver Dollar's expert and identically awarded by the jury) included $1.4 million on a note executed in 2001, and because the alleged fraud and fraudulent transfers did not occur until at least 2007, the $1.4 million could not have arisen from fraud and the jury could not have been awarding damages on a fraud or fraudulent transfer theory. This is untrue. Under Mississippi fraudulent conveyance law, one of a creditor's remedies for a debtor's fraudulent conveyance is "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." Miss. Code Ann. § 15-3-111(1)(a). Silver Dollar can ask a court to avoid the fraudulent transfer and reclaim the transferred funds all the way up to the creditor's full claim, even though the fraudulent transfer occurred *after* the initial debt. Of course, this requires Silver Dollar to identify the specific fraudulent transfers and their amounts to succeed. But Silver Dollar's fraud claim is not precluded from nondischargeability simply because the fraudulent activity took place after the note was signed.